UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| RICHARD A. GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No.: 1:14-CV-43 |
| | ) | Judge Collier |
| ROBERT JON GREEN et al., | ) | |
| | ) | |
| Defendants. | ) | |

# M E M O R A N D U M

Before the Court are motions to dismiss filed by Defendants Lonnie Leui, Kerry Leui, Christiane Leui, Kimberly Leui Kovach, Erinn Leui Santore, the trusts of Cynthia J. Green-Leui (collectively "Leui Defendants") (Court File No. 88), Jon Green, Eppy Green and Michael Oxentanko, (collectively "Green Defendants") (Court File No. 97), David Ruhling ("Defendant Ruhling") (Court File No. 115), Roger Fitch ("Defendant Fitch") (Court File No. 128), and Waldemar Kutzner ("Defendant Kutzner") (Court File No. 139) and a motion for summary judgment filed by Defendants Chambliss, Bahner, & Stophel, P.C., Alix C. Michel, Esq., William C. Carriger, Esq., Wayne E. Thomas, Esq., Maxfield Bahner, Esq., and Lisa K. Molhusen ("Chambliss Defendants") (Court File No. 143).  Plaintiff filed an individual response to Defendant Kutzner's motion (Court File No. 141) and the Chambliss Defendants' motion for summary judgment (Court File No. 148) and a collective response to the motions of the other Defendants (Court File No. 133).  The Defendants replied (Court File Nos. 134, 137, 138, 142, 151).[1]   For the following reasons, the Court will **GRANT** Defendants' motions to dismiss (Court File Nos. 88, 97, 115, 128, 139) and motion for summary judgment (Court File No. 143).

---

[1] Leui Defendants did not file a reply, but they are not required to do so. *See* L.R. 7.1(c) ("[R]eply briefs are not necessary and are not required by the Court.").

## I. FACTUAL BACKGROUND

These claims arise out of a dispute over the estate of Thelma Green, the mother of the Plaintiff, Defendant Robert Green, and Cynthia Green Leui. From 1996 until 2001, Thelma Green resided with Defendant Lonnie Leui and his now-deceased wife Cynthia Green-Leui. Lonnie Green and Cynthia Green-Leui charged Thelma Green fees for room, board, and care. In 2001, Thelma Green was placed into a nursing home after Cynthia Green-Leui was diagnosed with breast cancer. Thelma Green died in September 2002. Plaintiff filed for probate of the estate in October 2003.

For the next nine years, the parties litigated allegations by Plaintiff that Defendant Robert Green had been mismanaging the estate and using the certain trust assets for his own purposes. The Tennessee Chancery Court appointed a special master to investigate the claims. In September 2008, Plaintiff submitted a document to the special master alleging that Leui Defendants had improperly charged Thelma Green for some of the room, board and care expenses and that Defendant Robert Green had engaged in tax fraud. In May 2012, the Tennessee Chancery Court approved the Report of the Special Master finding that Robert Green had improperly incurred some expenses and directing him to reimburse the estate.[2] The Court found that the payments made to the Leui Defendants were reasonable and properly payable (Chancery Court Order ¶16). The Chancery Court then ordered a distribution of the estate and certified the case as complete (Chancery Court Order ¶ M). Plaintiff originally brought this action in California in May 2013, but it was transferred over his objection to the Eastern District of Tennessee on February 6, 2014 (Court File No. 77).

---

[2] The Chancery Court's Order has been submitted to the Court as an attachment to an affidavit at Court File No. 16-5. For ease of reference, the Court will cite to the order as follows (Chancery Court Order at ¶__).

## II.    MOTIONS TO DISMISS

### A.    Standard of Review

A Rule 12(b)(6) motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). The same deference does not extend to bare assertions of legal conclusions, however, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility as explained by the Court "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

3

**B.     Analysis**

Defendants each raise a number of often overlapping defenses to Plaintiff's claims.  To promote clarity and facilitate understanding of the Court's ruling, the Court will address each claim in the order alleged in Plaintiff's Amended Complaint (Court File No. 27) and the Court will break out the claims by Defendant where necessary.  Defendant Kutner's defense relies entirely on Plaintiff's noncompliance with Court orders and thus is treated separately.

**1.`     RICO and RICO Conspiracy**

The Racketeer Influenced and Corrupt Organizations Act ("RICO") makes it unlawful for any person, associated with an enterprise, to conduct or participate in the conduct of that enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c).  To state a claim under § 1962(c), a plaintiff must plead four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). Among other things, Defendants argue Plaintiff has failed to demonstrate a pattern of racketeering activity. The Court agrees.

"Racketeering activity" is defined as acts that constitute a violation of various state and federal criminal laws, including mail fraud, wire fraud, and extortion. 18 U.S.C. § 1961(1). A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). Merely pleading two predicate acts is insufficient, however, because "the term pattern itself requires the showing of a relationship between the predicates" and of the "threat of continuing activity." *H.J., Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 239 (1989) (alteration, internal quotation marks, and citation omitted).  "It is this fact of continuity plus relationship which combines to produce a pattern." *Id.*

"The requirement of 'continuity,' or a threat of continuing criminal activity, ensures that

RICO is limited to addressing Congress's primary concern in enacting the statute, i.e. long-term criminal conduct." *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133–34 (6th Cir. 1994). There are two kinds of continuity: closed-ended and open-ended. "A closed period of continuity may be demonstrated 'by proving a series of related predicates extending over a substantial period of time.'" *Moon*, 465 F.3d at 724 (quoting *H.J.*, 492 U.S. at 242). With respect to open-ended continuity, "[o]ften a RICO action will be brought before continuity can be established [by showing predicate acts spanning a substantial period of time]. In such cases, liability depends on whether the threat of continuity is demonstrated." *H.J. Inc.*, 492 U.S. at 242. "[P]laintiff[] must plausibly allege that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 410 (6th Cir. 2012).

Whether one is assessing closed-ended or open-ended continuity, the objective of this inquiry is to determine whether the alleged violations establish the kind of "long-term criminal conduct" with which Congress was concerned when it passed the RICO statute. *H.J.*, 492 U.S. at 242. Although this determination is fact specific, "[t]he threat of continuing racketeering activity need not be established . . . exclusively by reference to the predicate acts alone; rather, a court should consider the totality of the circumstances surrounding the commission of those acts." *Id.* A short-term scheme directed at a particular finite goal may be "by its very nature, insufficiently protracted to qualify as a RICO violation." *Thompson v. Paasche*, 950 F.2d 306, 311 (6th Cir. 1991). For example, in *Paasche*, the defendant's scheme involved the allegedly fraudulent sale of nineteen parcels of land. The Sixth Circuit reversed the RICO judgment against the defendant holding that the facts alleged did not establish continuity—either open-ended or closed-ended— because the scheme was, by its very nature, finite.

> Paasche's fraudulent scheme was an inherently short-term affair. He had nineteen lots to sell. Once he sold all of the lots, the scheme was over. It had to be, he had no more land to sell. Thus, his scheme was, by its very nature, insufficiently protracted to qualify as a RICO violation.

*Paasche*, 950 F.2d at 311. The Sixth Circuit relied on similar reasoning in dismissing RICO claims in both *Moon v. Harrison Piping Supply*, 465 F.3d 719 (6th Cir. 2006), and *Vemco Inc. v. Camardella*, 23 F.3d 129 (6th Cir. 1994). In *Moon*, "[the plaintiff's] allegations center[ed] around a single RICO scheme with a single object stemming from a dispute about whether the plaintiff [was] impaired by a workplace disability entitling him to benefits." 465 F.3d at 726. Similarly, in *Vemco*, the plaintiff's allegations amounted to a single scheme to extort a higher price in a building contract with no threat that the scheme would be repeated. *See Vemco*, 23 F.3d at 134 ("There are no facts pleaded suggesting anything but that once Flakt received the money it was requesting in the billing statements, its scheme would be over, and it would end its association with Vemco. Moreover, there is no allegation that Flakt engaged in similar practices on other contracts involving other parties."). In both cases, the Sixth Circuit rejected the plaintiffs' RICO claims holding that these kinds of finite, limited schemes were simply not within the ambit of the RICO statute.

Here, it is unclear whether Plaintiff intends to rely on closed-ended and open-ended continuity. In Plaintiff's Complaint he states the scheme has continued for seventeen years (Court File No. 1, ¶ 146), however, the protracted nature of state probate litigation does not convert this limited alleged scheme into a pattern of racketeering activity.[3] Like the schemes alleged in *Paasche*, *Moon*, and *Vemco*, the scheme alleged here is inherently finite, and there are

---

[3] "[A]ctions taken years later by a party to avoid a court judgment . . . have been held to be too unrelated and distinct to be part of a pattern along with the earlier predicate acts." *Vemco*, 23 F.3d at 134.

6

no facts alleged suggesting that there is any reason to believe the scheme might be repeated. Assuming everything Plaintiff states is true; the scheme was entirely directed at depriving him of his fair share of Thelma Green's estate by kidnapping his mother and executing a false power of attorney. This inherently limited scheme is similar to the fraudulent real estate, bad business deal, and workplace disability disputes that the Sixth Circuit has held do not constitute the "long-term criminal conduct" with which Congress was concerned when it passed the RICO statute. *H.J.*, 492 U.S. at 242. Because the facts alleged do not give rise to the pattern required to establish either a RICO violation or a RICO conspiracy,[4] the Court will dismiss Plaintiff's RICO and RICO conspiracy claims.

### 2. ERISA

Plaintiff asserts claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. As a threshold matter, ERISA's civil enforcement provision provides that a participant, beneficiary or fiduciary can bring a civil action to enforce the provisions of ERISA. 29 U.S.C. § 1132(a). Plaintiff does not allege that he is a beneficiary, participant, or fiduciary of the benefits funds at issue here in either his amended complaint or his response to Defendants' motions to dismiss. In the Sixth Circuit, a person seeking to enforce ERISA provisions as a beneficiary must "ha[ve] a reasonable or colorable claim to benefits." *Crawford v. Roane*, 53 F.3d 750, 754 (6th Cir. 1995).[5] The mere fact that the party is the child of a participant is

---

[4] "To plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir.1983)). Because Plaintiff cannot state a claim for the RICO violation, he necessarily fails to state a claim for the RICO conspiracy.

[5] Apart from the issue of standing, the Court also notes that Plaintiff has not alleged facts

insufficient. *See id.* Because the Plaintiff has alleged no facts that would give rise to a reasonable or colorable claim to benefits, the Court will dismiss all claims against Defendants based on ERISA.

### 3. Legal Malpractice

Plaintiff's claims for legal malpractice do not relate to parties addressed in this portion of the memorandum.

### 4. Professional Malpractice

Plaintiff asserts claims for professional malpractice against Defendants Fitch and Ruhling.[6]  A claim for professional malpractice is an action based on negligence and thus requires the Plaintiff to show that Defendants owed him a duty of care, that they breached that duty, that he was injured, and that their breach caused his injuries.  *George v. Alexander*, 931 S.W.2d 517, 525 (Tenn. 1996).  A professional malpractice claim is subject to a one-year statute of limitations. Tenn. Code Ann. § 28-3-104.  Such a cause of action accrues when the plaintiff knows or reasonably should have known that the injury has been sustained. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998).

Defendant Ruhling argues that Plaintiff fails to state a claim for legal malpractice. Plaintiff's claims for malpractice against Mr. Ruhling appears to be based on a letter Ruhling sent Plaintiff in 2004 revealing that Defendant Green had imposed unjustified tax liability on the

---

bringing the plans at issue within the coverage ERISA.  Generally, church benefits plans are exempt from ERISA unless the church expressly waives its exemption.  29 U.S.C. § 1003(b)(2). Plaintiff has not alleged that the General Conference of Seventh Day Adventists waived this exemption.

[6] Plaintiff also asserts claims for professional malpractice against Defendant Kutzner, but, because Defendant Kutzner's defense is based on process deficiencies unique to Kutzner, his motion to dismiss is not addressed in this portion of the memorandum.

estate. Plaintiff asserts that the purpose of this letter was to "deceive Plaintiff into believing that such improprieties were inadvertent and isolated and would never be repeated" (Court File No. 27, ¶ 107). Plaintiff asserts no facts that support such a purpose, nor does he assert any facts that could support a finding that Defendant Ruhling did not comply with the standard of care required of tax accountants. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Here, Plaintiff has done no more than assert an unlawful purpose with no facts justifying such an assertion. Because the "facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The Court will dismiss the professional malpractice claim against Defendant Ruhling.

Defendant Fitch similarly argues that Plaintiff's First Amended Complaint fails to state a claim for professional malpractice against Fitch, and also contends that even if it did, such a claim would be barred by the statute of limitations. Plaintiff does not specifically address the statute of limitations issue with respect to the professional malpractice claims in his response. Plaintiff's claims for professional malpractice against Defendant Fitch appear to be based on discrepancies between an audit conducted by Fitch of the Estate's accounts and the report produced by the special master. In the Complaint, Plaintiff acknowledges that such discrepancies (and thus any injuries) were revealed by the Special Master's report in the Chancery Court litigation. This report was submitted to the Chancery Court on July 25, 2011.[7]

---

[7] In Plaintiff's amended complaint (Court File No. 27), Defendant does not mention the date of the original report, but rather the date that the report was accepted by the Chancery Court. However, in his original Complaint Plaintiff acknowledges that the Report was issued on July 25, 2011 (Court File No. 1, ¶ 43).

As Plaintiff notes in his Amended Complaint, this report revealed the discrepancy that forms the basis of his alleged professional malpractice claim. Plaintiff thus knew or should have known of this discrepancy in July 2011 at the latest. This action was not filed until May 30, 2013 approximately 20 months after the most conservative date when Plaintiff either knew or should have known of the alleged facts giving rise to the malpractice claims. The Court will thus dismiss Plaintiff's claim for professional malpractice against Defendant Fitch.

     5.     **Fraud**

        a.     **Green and Leui Defendants**

In Tennessee, the statute of limitations for common law fraud is three years,[8] Tenn. Code Ann. § 28-3-105, and such a cause of action accrues "when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996). Green and Leui Defendants assert that Plaintiff knew or had reason to know of the alleged fraudulent activity prior to 2010 and thus Plaintiff's complaint is barred by the applicable statute of limitations. They point to filings in the Chancery Court case demonstrating Plaintiff's knowledge of those activities he characterizes as fraudulent.[9] In one of these filings entitled

---

[8] Plaintiff appears to assert claims of tax fraud, wire fraud, and mail fraud, however, there is no private right of action to enforce any of these federal statutes. *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999) (holding that, although mail and wire fraud can be remedied as RICO predicates, they do not create a private right of action by themselves); 26 U.S.C. § 7401 (providing that "no civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced").

[9] While the Court ordinarily may not look to matters outside the pleadings when deciding a motion to dismiss, the Court may "consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Armengau v. Cline*, 7 Fed. App'x

"Additional Information for Accounting and Trustee Issues" (Court File No. 16-7), Plaintiff asserts myriad allegations of fraud overlapping with those alleged here. These allegations demonstrate that Plaintiff had knowledge of the alleged conduct giving rise to these claims at the latest in September 2008. Any cause of action for common law fraud he had based on those allegations expired in 2011, a full two years before this case was brought.

These claims are also barred by the doctrine of collateral estoppel. The purpose of the doctrine of collateral estoppel is "to conserve judicial resources, to relieve litigants from the cost and vexation of multiple lawsuits, and to encourage reliance on judicial decisions by preventing inconsistent decisions." *Beaty v. McGraw*, 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998). Tennessee recognizes that such principles are especially important in proceedings related to the due administration of estates. *Arnold v. Marcom*, 352 S.W.2d 936, 939 (Tenn. 1961) (noting that "public policy demands that the courts should shorten as far as possible the litigation lest the estate be absorbed in Court costs and expenses"). A party seeking to assert collateral estoppel must demonstrate: (1) that the issue was identical to the issue decided in the prior judgment; (2) that the issue was actually litigated and decided on the merits; (3) that the prior judgment was a final judgment; (4) that the party against whom the defense is asserted was a party to the prior suit; and (5) that the party against whom the defense is asserted had a full opportunity to litigate the issue in the prior proceeding. *Beaty*, 15 S.W.3d at 824.

The issues raised by Plaintiff in his fraud claims against the Green and Leui Defendants are that Defendants conspired to deprive Plaintiff of his fair share of his mother's estate, that Leui Defendants improperly charged Plaintiff's mother for room, board, and care, that Defendant

_____

336, 344 (6th Cir. 2001). Here, Plaintiff's filings in the prior litigation are a matter of public record.

Robert Green misappropriated funds, and that Defendant Robert Green misappropriated estate funds for personal use from the Estate of Thelma Green. It is undisputed that Plaintiff was a party to the prior Chancery Court matter and that the order was a final judgment. In that matter, the following issues were actually litigated and decided on the merits and thus are entitled to preclusive effect: (1) Plaintiff's fair share of his mother's estate; (2) the propriety of the Leui Defendant's room, board, and care expenses (Chancery Court Order ¶ 16); and (3) the propriety of expenditures made by Defendant Robert Jon Green (Chancery Court Order). The Chancery Court has jurisdiction to determine the proper distribution of estate assets, including whether the trustee has misappropriated assets of the estate, and in fact the court did so here (*See generally* Chancery Court Order). Plaintiff cannot now be heard to complain about these same issues. Thus, Plaintiff's fraud claims against the Green and Leui Defendants are also barred by the doctrine of collateral estoppel.

The Court will thus dismiss Plaintiff's fraud claims against the Green and Leui Defendants as barred by both collateral estoppel and the statute of limitations.

### b.     Defendants Ruhling and Fitch

Defendants Ruhling and Fitch argue that Plaintiff failed to state a claim for fraud. In Tennessee, common law fraud requires "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006). Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Sixth Circuit has construed this rule as requiring that a plaintiff, at a minimum "'allege the time, place, and content of the alleged

misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W. D. Mich.1992)). "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendants to answer, addressing in an informed way plaintiffs claim of fraud." *Coffey*, 2 F.3d at 162 (internal quotations omitted).

### i.    Defendant Ruhling

The only allegation of any sort of fraudulent statement alleged to have been made by Defendant Ruhling is found in ¶¶ 106 and 107 of Plaintiff's Amended Complaint (Court File No. 27).

> <u>By letter dated July 9, 2004</u>, Mr. Ruhling informed Plaintiff that Mr. Ruhling and Rev. Green had filed fraudulent tax returns for 2002 and 2003. Such fraudulent tax returns, if filed by mail or electronically [sic], also constitute mail or wire fraud. Such fraud injures Plaintiff economically, by imposing unjustified tax liabilities on Plainiffs [sic] share of the Estate, or by concealing and reporting Estate income on Rev. Green's personal returns and thus diminishing Plaintiffs [sic] share of the Estate.
> Mr. Ruhling's disclosure by letter was intentionally false, whose purpose was to deceive Petitioner into believing that such inproprieties [sic] were inadvertent and isolated, and would never be repeated.

(Court File No. 27, ¶¶ 106, 107).[10]

Plaintiff's allegations do not provide any basis for his assertion that the purpose of the letter was to deceive.  Such vague allegations do not put Defendant Fitch on notice of what about his communication conveyed this allegedly deceptive purpose.  Indeed, such allegations do not

---

[10] As noted above, there is no private right of action for tax fraud. 26 U.S.C. § 7401 (providing that "no civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced").

13

even allege a false statement, but rather a false purpose. Regardless of Defendant Ruhling's purpose in sending the letter, the letter must have actually contained a false representation about past or existing fact. Plaintiff's complaint alleges no such misrepresentation. Rather, he alleges that the (apparently accurate) disclosure of the improper tax returns had the *purpose* of deceiving Plaintiff into believing that such action would not be repeated. Fraud requires an actual false statement. *See Kincaid*, 221 S.W.3d at 40. Even assuming the Complaint alleged that the letter contained an explicit statement that the tax fraud would not be repeated, such an allegation would not state a claim for fraud. Tennessee does not generally look favorably on a cause of action for fraud based on forward-looking statements. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 499 (Tenn. 1978). Tennessee courts do recognize such a cause of action, but only "where the statement of intention is shown to be false when made (i.e., a misrepresentation of actual present intention) by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promise." *Wright v. Wacker-Chemie AG*, No. 1:13-CV-331, 2014 WL 3810584, at *9 (E.D. Tenn. Aug. 1, 2014) (quoting *Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77, 80–81 (Tenn. Ct. App. 1983)). To the extent that Plaintiff does allege a false statement, it is forward looking, and there are no facts to support that it was false when made. For these reasons, the Court will dismiss the Plaintiff's fraud claims against Defendant Ruhling.

## ii.     Defendant Fitch

Defendant Fitch also argues that Plaintiff fails to state a claim for fraud under Tennessee law. Plaintiff alleges that because the results of Fitch's audit of the account were contradicted by the later findings of the Special Master, Fitch must have engaged in fraud in his audit. As stated above, to state a claim for fraud, Plaintiff must allege facts from which the Court can draw the

14

plausible inference that Fitch intentionally misrepresented facts in his audit report with knowledge of the falsity of those facts. Plaintiff does not meet this burden. Plaintiff alleges no facts regarding Defendant Fitch's intent when he certified his audit. The Court will thus dismiss Plaintiff's fraud claims against Defendant Fitch.

### 6. Defendant Kutzner

The case was originally filed in California in May 2013 (Court File No. 1). It was subsequently transferred in January 2014 (Court File No. 75). Throughout this time, process was never served on Defendant Kutzner. Because 120 days had passed since the filing of the Complaint and process had not yet been served on Defendant Kutzner, the Court issued a show cause order to Plaintiff requiring that Plaintiff show cause why this action should not be dismissed as to Defendant Kutzner on April 23, 2014. On May 5, 2014, Plaintiff filed for an extension and a request to serve by publication (Court File No. 124). The Court denied Plaintiff's request to serve by publication but did grant Plaintiff an additional 30 days to serve Defendant Kutzner from May 16, 2014 (Court File No. 126). Plaintiff obtained a summons on May 30, 2014 but did not file the affidavit of service until August 20, 2014 (Court File No. 135). That affidavit indicated that the process server retained by Plaintiff had received a copy of the summons on July 25, 2014 and had served that summons personally on July 31, 2014, on Defendant Kutzner at his residence at the address listed on the May 30 summons (Court File No. 135).

Fed. R. Civ. P. 4 requires that a defendant be served within 120 days of the filing of a complaint. Failure to effect timely service compels dismissal in the absence of good cause, *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996), and the plaintiff bears the burden of showing good cause, *Habib v. Gen. Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994). Good cause may be shown

15

by some intervening emergency that prevents compliance or by showing that the plaintiff "made a reasonable and diligent effort to effect service." *Id.* at 74. Separate and apart from the Rule 4 analysis, pursuant to Fed. R. Civ. P. 41(b) the Court may also dismiss a claim for failure to comply with a court order. Here, the Plaintiff had failed to effect service of Defendant Kutzner for one year after the case was initially filed in California and at least 120 days since the case was transferred to this district. After the Court granted the initial extension of 30 days, Plaintiff waited two weeks to obtain the summons. The affidavit of the process server states that she received the summons on July 25, a full month after the Court's deadline had expired. While Plaintiff blames this delay on difficulty finding Defendant Kutzner's address, the address listed on the May 30 summons and the address where the process server served Defendant Kutzner are the same. Difficulty with the address is thus not good cause for the delay. Plaintiff also seeks to shift blame to the firm he had asked to retain a Tennessee process server; however, a party is responsible for the actions of his agent and the claimed delay in finding a local process server is not grounds for Plaintiff's failure to comply. In light of the lack of good cause shown for both the failure to comply with Rule 4 and the Court's order of May 16, 2014 (Court File No. 126), the Court will dismiss Plaintiff's claims against Defendant Kutzner pursuant to Fed. R. Civ. P. 4 and Fed. R. Civ. P. 41(b).

## III.   MOTION FOR SUMMARY JUDGMENT

### A.      Standard of Review

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888,

897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

B.    Analysis

As the Court explained above, Plaintiff's allegations do not set forth a pattern of racketeering sufficient to bring this action within the "long-term criminal conduct" with which

Congress was concerned when it passed the RICO statute. *H.J.*, 492 U.S. at 242. Therefore, the Court will grant Chambliss Defendants' motion for summary judgment as to the RICO and RICO conspiracy claims. Similarly, because Plaintiff fails to properly allege that he has standing to pursue his ERISA claims or even the existence of an ERISA-covered plan, the Court will also grant Defendants' motions for summary judgment as to those claims based on the analysis set forth above. This portion of the memorandum will deal with the legal malpractice claims and the fraud claims asserted against the Chambliss Defendants.

### 1.    Legal Malpractice

Chambliss Defendants argue that they are entitled to summary judgment on Plaintiff's legal malpractice claim because Plaintiff does not have standing to pursue such a claim and because the statute of limitations has run. Because the statute of limitations has run on any potential claim, the Court does not reach the issue of whether Plaintiff has standing to assert such a claim as a beneficiary of the estate.

A legal malpractice claim is subject to a one-year statute of limitations. Tenn. Code Ann. § 28-3-104. Legal malpractice claims are governed by the discovery rule and thus accrue when the plaintiff knows or reasonably should have known that the injury has been sustained. *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). "In legal malpractice cases, the discovery rule is composed of two distinct elements: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct." *Id*. Causing a Plaintiff to incur inconvenience or take corrective action constitutes such an "actual injury." *Id*. And a plaintiff may not delay filing suit until all the

injurious effects and consequences of the alleged wrong are actually known to the plaintiff. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998).

Plaintiff argues in his response that his injury accrued in December 2012, when Chambliss Defendants submitted their supplemental report to the Tennessee Chancery Court. However, on the undisputed evidence before the Court, it is abundantly clear that the Plaintiff knew or should have known of his alleged injuries long before December 2012. Plaintiff's filings throughout the Tennessee Chancery Court litigation show, in his own words, that he fervently believed that Chambliss Defendants were conspiring with Defendant Robert Jon Green to deprive Plaintiff of his rightful share of the estate. For example, in December 2005, Defendant filed a motion for contempt against Defendant Robert Jon Green and his counsel (Chambliss Defendants) (Court File No. 143-1, Carriger Aff. Ex. G). In this motion, Plaintiff alleges that "Jon Green's *and his Counsel* are protracting these proceedings in order to prevent timely investigation and possible prosecution for Jon Green's criminal acts" (*id*. at p. 4) (emphasis added). In a blistering 2006 letter to Defendant Carriger, Plaintiff, in underlined text, accuses Chambliss Defendants of improperly favoring Defendant Robert Jon Green over Plaintiff—the very allegation forming the basis of Plaintiff's legal malpractice claim.

> Your adamant refusal to cooperate with your own CPA exemplifies your long-standing collusion with your client, self-appointed Trustee/Administrator" Jon Green, to cover up his likely "Offenses Against Property" and other likely crimes, including perjury, forgery, and "Adult Abuse."

(Court File No. 143-1, Carriger Aff., Ex. H) (emphasis is original). In this same letter, Plaintiff specifically accuses Defendant Carriger of "violat[ing] [his] 'special obligations' towards [Plaintiff] as an undisputed beneficiary of the Trust(s)/Estate 'administered' by [Defendant Richard Jon Green]" (*id*.). From these documents, it is clear that Plaintiff had notice of the

alleged facts giving rise to his legal malpractice claims as early as 2005 and 2006. These claims are thus barred by the statute of limitations.

### 2. Fraud

In Tennessee, common law fraud[11] requires "(1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the requirement that the misrepresentation involve a past or existing fact." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006). Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Sixth Circuit has construed this rule as requiring that a plaintiff, at a minimum "'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W. D. Mich.1992)). "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendants to answer, addressing in an informed way plaintiffs claim of fraud." *Coffey*, 2 F.3d at 162 (internal quotations omitted).

To the extent that Plaintiff intends to assert fraud through his vague references to tax fraud, wire fraud, and mail fraud throughout the Amended Complaint, such allegations do not meet the pleading standard required for general pleadings under Fed. R. Civ. P. 8, much less the heightened pleading requirement for fraud under Fed. R. Civ. P. 9(b). The only specific

---

[11] As the Court has explained above, *supra* note 8, there is no private right of action for mail fraud, wire fraud, and tax fraud.

fraudulent statement of Chambliss Defendants referenced in the Amended Complaint is a letter sent in 2007 regarding the Sale of the Holiday Retirement Corporation. Indeed in Plaintiff's response to Chambliss Defendant's motion for summary judgment, Plaintiff acknowledges that his fraud allegations stem from the statements regarding that sale (Court File No. 148, Pls. Resp. Br. at p. 22). In Tennessee, the statute of limitations for common law fraud is three years, Tenn. Code Ann. § 28-3-105, and Tennessee applies the "discovery rule" which provides that a cause of action accrues "when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered, his injury and the cause thereof." *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996).

In filings dated April 8, 2008, related to his motions to disqualify Chambliss Defendants as counsel in the Chancery Court litigation, Plaintiff asserted that "Mr. Carriger and [Defendant] Jon Green are likely colluding in concealing the true value of the Holiday Retirement Distribution" (Court File No. 143-1, Carriger Aff., Ex. O, at p. 4). Plaintiff does not dispute the authenticity of this document but rather argues that the statute of limitations should run from December 17, 2012 when Defendants' supplemental report "revealed" his injury (Court File No. 148, Pls. Resp. Br. at p. 22). The discovery rule requires that the statute of limitation begin to run when the Plaintiff knew or reasonably should have known of the facts giving rise to his injury, not when the full scope of the injury is revealed. *John Kohl*, 977 S.W.2d at 533 ("A plaintiff may not, of course, delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff."). Here, Plaintiff himself alleged fraudulent conduct (in the underlying Chancery Court litigation) with respect to the Holiday Retirement sale in April 2008. Even taking the evidence in light most favorable to Plaintiff, his own court filings show that he was on notice of the facts giving rise to his fraud claims in 2008. The three-year

statute of limitations thus expired in April 2011, a full two years before this action was filed in May 2013 (Court File No. 1). On the undisputed facts, the statute of limitations has run on Plaintiff's fraud claims against Chambliss Defendants, and the Court will thus grant Chambliss Defendants' motion for summary judgment as to Plaintiff's fraud claims.

## IV.    CONCLUSION

For the above reasons, the Court will **GRANT** the motions to dismiss filed by Defendants Lonnie Leui, Kerry Leui, Christiane Leui, Kimberly Leui Kovach, Erinn Leui Santore, the trusts of Cynthia J. Green-Leui, Jon Green, Eppy Green and Michael Oxentanko, David Ruhling, Roger Fitch, and Waldemar Kutzner (Court File Nos. 88, 97, 115, 128, 139). The Court will also **GRANT** Chambliss Defendants' motion for summary judgment (Court File No. 143).

**An order shall enter.**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

22